(C.D. 4170)

Northwest Machinery Sales Co.
J. T. Steeb & Co., Inc. } *v.* United States

United States Customs Court, Second Division

(Decided January 29, 1971)

*Glad & Tuttle* (*George R. Tuttle, Jr.*, and *Hudson F. Edwards* of counsel) for the plaintiffs.

*L. Patrick Gray, III*, Assistant Attorney General (*Peter Jay Baskin, Patrick Gill*, and *Urban S. Mulvehill*, trial attorneys), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

NEWMAN, Judge: Plaintiffs have protested the Government's classification for customs duty purposes of merchandise described on the invoices as "choker hooks," which were imported from Japan in 1966. These hooks are used in the logging industry to move freshly cut timber by forming a cable cinch around the logs.

The merchandise was assessed with duty by the Government at the rate of 19 per centum ad valorem under the provision in item 657.20 of the Tariff Schedules of the United States (TSUS) for "Other" articles of iron or steel. Plaintiffs claim that the merchandise is properly dutiable at the rate of 10.5 per centum ad valorem under the provision in item 664.10, TSUS, for parts of lifting, handling, loading, or unloading machinery.[1]

We have concluded that plaintiffs' claim should be overruled.

THE STATUTES

Tariff Schedules of the United States:

Classified under:

SCHEDULE 6, PART 3, SUBPART G. – METAL PRODUCTS NOT SPECIALLY PROVIDED FOR

Articles of iron or steel, not coated or plated with precious metal:
   *     *     *     *     *     *     *
Other articles:
   *     *     *     *     *     *     *

| 657.20 | Other | 19% ad val. |

---

[1] Plaintiffs' claim under item 657.09, having been abandoned at the trial, is hereby dismissed. Other claims, which were not prosecuted by plaintiffs, are deemed abandoned and are also dismissed.

Claimed under:

GENERAL HEADNOTES AND RULES OF INTERPRETATION – TARIFF
SCHEDULES OF THE UNITED STATES

10. General Interpretative Rules. For the purposes of these schedules—

\*        \*        \*        \*        \*        \*        \*

(c) an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it; \* \* \*

\*        \*        \*        \*        \*        \*        \*

(ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

SCHEDULE 6, PART 4, SUBPART B. – ELEVATORS, WINCHES, CRANES, AND RELATED MACHINERY; \* \* \*

Subpart B headnote:

1. This subpart does not cover—
   (i) cranes or other machines mounted on vehicles, on vessels or other floating structures, or on other transport equipment (see part 6 of this schedule) ; \* \* \*

\*        \*        \*        \*        \*        \*        \*

664.10  Elevators, hoists, winches, cranes, jacks, pulley tackle, belt conveyors, and other lifting, handling, loading or unloading machinery, and conveyors, all the foregoing and parts thereof not provided for in item 664.05 _____    10.5% ad val.

THE RECORD

In the process of "logging," the first step is to fell the trees. Once the trees have been felled and cut into log lengths, the next step is to move these logs from the stumps to the landing area from which they will be transported to the mill. Choker hooks are used in the process of moving logs from the stumps to the landing area.

A choker hook is part of a logging "choker." The logging choker itself consists of a length of cable or rope, and is analogous to the lasso rope used by a cowboy. One end of the cable goes around the log, and the choker hook completes the loop.

On either end of the cable there is a "ferrule" or knob. The cable passes through the choker hook and around the log, and the knob is then hooked into a slot that looks like a keyhole on the choker hook.

The log is choked or pulled tight, and the cable is then attached to whatever machinery is being used to "yard" or move the log into the landing. Thus, in essence, the choker hook functions to make the necessary connection between a winch, tractor, or other yarding machinery and the log.

The choker (or cable) is attached to a winch line or main line cable motivated by a winch. When the winch is mounted on a tractor, the tractor will stop and "pay out" the winch line. The choker setter[2] takes the line out to the log on which he has already set a choker. Thereupon the choker is attached to the winch line by a hook or other device. The logs can then be winched into the tractor and dragged to the landing.

Additionally, the choker (including the choker hook) can be attached directly to a tractor without any winch or similar device. When used in that manner, a hook is attached to the frame of the tractor and the chokers are attached to the hook on the tractor.

Choker hooks are also used in "cable logging." Such system of logging is used in the western part of Oregon where the terrain is too steep to operate tractors, and another motive force must be used to move the logs from the stump to the landing area. Cable logging is accomplished by a "yarder" comprised of a system of winches and cables located at a landing on a hill. Chokers are used to connect the logs to the cable system. Hence, a cable system (rather than a tractor) moves the logs to the landing area. In a "Highlead Cable Yarding System," which is commonly used, the yarder portion of the system is usually mounted on a vehicle.

A choker hook or similar device is essential to the function of the choker and, when in use, the choker hook is essential to the operation of pulling a log. However, in the logging industry, the choker hook is not regarded as a "part" of any of the machinery with which it is used, but rather is considered a "device unto itself" (R. 53). A choker hook is "an interchangeable piece of equipment that is used with many devices" (R. 55).

## I.

Inasmuch as plaintiffs claim that the choker hooks are classifiable as "parts" under item 664.10, TSUS, we must determine whether the record establishes that the merchandise was "solely or chiefly used as a part." See General Interpretative Rule 10(ij).

---

[2] A "choker setter" is the man who actually places the cable line around the log and secures the line with the use of the choker hook. (R. 21.)

At the trial, plaintiffs presented the testimony of two witnesses and introduced in evidence an illustrative sample of the imported merchandise.

Plaintiffs' first witness was Michael J. Hart, an import specialist for the Bureau of Customs at Portland, Oregon. Through Mr. Hart, a four pound Bantam hook illustrative of the imported articles was identified and received in evidence as exhibit 1. It should be noted that Mr. Hart testified he had never "seen Exhibit 1 used" (R. 17).

Plaintiffs' second witness was Ralph Caughell (an employee of a customhouse broker) who had observed the use of hooks similar to exhibit 1 when he was a young lad, some thirty years ago in 1938, during three or four visits made to the logging camp where his grandfather worked. However, Mr. Caughell had not observed the use of the choker hooks since 1938!

Obviously, the evidence presented by plaintiffs has little or no probative value respecting the issue of whether the choker hooks were solely or chiefly used as parts at the time of importation in 1966.

Defendant called Jack H. Usher, who was employed by the United States Forest Service for twenty-three years. Usher had extensive experience in the States of Washington, Oregon and California in connection with timber management, the logging of Government timber, and the administration of sales of timber by the Government. At the time of trial and for the previous three years, Usher was the forester in charge of timber sales preparation and evaluation.

The testimony of defendant's well-qualified witness shows that although choker hooks were used in conjunction with logging winches, tractors and other machinery, such choker hooks were not regarded by the logging industry as "parts" of any of the foregoing. This testimony stands unrebutted by plaintiffs. Consequently, we find that the record fails to sustain plaintiffs' burden of proving that the choker hooks were solely or chiefly used as "parts," as required by General Interpretative Rule 10(ij).

## II.

In view of the foregoing, it is unnecessary to consider defendant's additional contention that the choker hooks are excluded from item 664.10 by virtue of headnote 1, subpart B, part 4, schedule 6, inasmuch as the record shows that the choker hooks were chiefly used with winches mounted on tractors, or other vehicular-mounted lifting or handling machinery.

Plaintiffs' claim under item 664.10, TSUS, is overruled. All other claims are dismissed. Judgment will issue accordingly.