**BORDER BROKERAGE CO., INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 74–11–03050.**

United States Court of International Trade.

Dec. 30, 1981.

George R. Tuttle, San Francisco, Cal. (Stephen S. Spraitzar, San Francisco, Cal., at the trial and on the briefs), for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., Washington, D. C., Joseph I. Liebman, Attorney in Charge, Commercial Litigation Branch, New York City (Robert H. White, New York City, at the trial and on the brief), for defendant.

FORD, Judge:

Plaintiff by this action contests the classification and assessment of duty of basically two types of merchandise. The first category consists of numerous items set forth in schedule A, attached hereto and made a part hereof, which plaintiff contends are chiefly used by the logging industry and therefore entitled to entry free of duty under item 666.00, Tariff Schedules of the United States. All of the merchandise contained in schedule A was classified by Customs under the basket provision for metals, item 657.20, TSUS, as articles of iron or steel and assessed with duty at various rates depending upon the date of entry. The second category consists of the four articles set forth in schedule B, attached hereto and made a part hereof, which plaintiff claims are parts of tractors suitable for agricultural use and, as such, entitled to entry free of duty under item 692.30, TSUS. The grouser bars and caps are alternatively claimed to be dutiable at 9%, 8%, 6.5% or 5.5% ad valorem under item 692.35, TSUS, depending upon date of entry. The corner bits and repointer tips are alternatively claimed to be subject to duty at 8%, 7%, 6% or 5% ad valorem under item 664.05, TSUS, depending upon date of entry.

The pertinent statutory provisions are as follows:

| | | |
|---|---|---|
| Articles of iron or steel, not coated or plated with precious metal: | | |
| * * * * * * * | | |
| Other articles: | | |
| * * * * * * * | | |
| 657.20 | Other ................ | 15%, 13%, 11%, or 9.5% ad valorem, depending upon date of entry. |

| | | |
|---|---|---|
| 666.00 | Machinery for soil preparation and cultivation, agricultrual drills and planters, fertilizer spreaders, harvesting and threshing machinery, hay or grass mowers (except lawn mowers), farm wagons and carts, milking machines, on-farm equipment for the handling or drying of agricultural or horticultural products, and agricultural and horticultural implements not specially provided for, and parts of any of the foregoing ..................... | Free |
| 664.05* | Mechanical shovels, coal-cutters, excavators, scrapers, bulldozers, and other excavating, levelling, boring, and extracting machinery, all the foregoing, whether stationary or mobile, for earth, minerals, or ores; pile drivers; snow plows, not self-propelled; all the foregoing and parts thereof ....... | 8%, 7%, 6% or 5% ad valorem, depending upon date of entry. |
| | Tractors (except tractors in item 692.40 and except automobile truck tractors), whether or not equipped with power take-offs, winches, or pulleys, and parts or such tractors: | |
| 692.30 | Tractors suitable for agricultural use, and parts thereof .................... | Free |
| * * * * * * | | * |
| 692.35* | Other .................... | 9%, 8%, 6.5%, or 5.5% ad valorem, depending upon date of entry. |

The record consists of the testimony of five witnesses called on behalf of plaintiff and the receipt in evidence of exhibits 1 through 11 and exhibits 13 through 18. Defendant offered, and there were received in evidence, seven exhibits.

There being two different categories of merchandise, consideration will be given first to those items set forth in schedule A. The court notes that in plaintiff's second amended complaint in paragraph 8 it is alleged that the merchandise (set forth in schedule A) is chiefly used in logging applications. To this statement defendant, in its answer to the second amended complaint, admits such chief use.

■ Plaintiff correctly contends that under authority of *United States v. Norman G. Jensen, Inc.*, 64 CCPA 51, C.A.D. 1183, 550 F.2d 662 (1977), logging is an agricultural pursuit and, therefore, the merchandise is agricultural implements. In *Jensen* the court had before it certain tractors denominated "Tree Farmer' Skidder Machines", which were utilized to drag logs from the area where the trees were grown to a loading or collection area. The court held the growing of trees and the harvesting of them is an agricultural pursuit, and therefore the tractors involved therein were suitable for agricultural use and, as such, subject to classification under item 692.30, TSUS.

Defendant contends the articles contained in schedule A are part of a class of wire rope fittings which are used in many diverse industries including logging, construction, maritime, mining, oil well rigging, telecommunications and industry in general. In addition, defendant contends even if the wire rope fittings constitute a separate class of articles, plaintiff has failed to prove the chief use of the class. Insofar as use is concerned, General Interpretative Rule 10(e)(i) sets forth the following requirements:

(e) in the absence of special language or context which otherwise requires—

(i) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i.e., the use which exceeds all other uses (if any) combined;

■■ It would appear that defendant's admission in its response to the second

court.

---

* Pleadings deemed amended to conform to evidence pursuant to Rule 15(b) of the rules of this

amended complaint that the merchandise is chiefly used for logging applications renders the question of use moot. This is particularly so since there is substantial evidence of record which supports the question of use. The foregoing coupled with the decision in *Jensen*, which held the harvesting of lumber to be an agricultural use, clearly established the fittings to be chiefly used in agriculture. With this fact in mind it is apparent that the imported fittings are properly subject to classification under item 666.00 since it is obvious that they are "implements". The term implements, as used in the free provisions covering agricultural implements, is given a broad meaning. *Wilbur-Ellis Co. v. United States*, 26 CCPA 403, C.A.D. 47 (1939).

In *Wilbur-Ellis* steel bale ties used for baling hay were held to be agricultural implements within the broad meaning of the term, citing and quoting the following from *United States v. S. S. Perry*, 25 CCPA 282, T.D. 49395 (1938):

> The statutory term "agricultural implements" should be given a broad, not a narrow, meaning. *United States v. S. S. Perry, supra.*

In holding in the *Perry* case, *supra*, that leg bands of celluloid chiefly used for the identification of poultry, were free of duty as agricultural implements under paragraph 1604, *supra*, this court, among other things, said:

> Frequently, "implement" is regarded as being synonymous with a tool or utensil used in manual work. *The term has a broader meaning which we think should be accepted in arriving at the intent of Congress in the enactment of paragraph 1604.* [Italics not quoted.] We quote several definitions of the noun "implement" from Webster's New International Dictionary:
>
> *implement.* 1. That which fulfills or supplies a want or use; esp., an instrument, tool, or utensil used by man to accomplish a given work; as, the *implements* of trade, of husbandry, or of war.
>
> 2. A constituent part; an element. *Obs. & R.*

3. *Scots Law.* Fulfillment, performance.

SYN. *implement, tool, utensil, instrument* agree in suggesting relatively simple construction and personal manipulation. *Implement* and *tool* are often interchangeable. But *implement* is the broader term, frequently implying that by which any operation is carried on: *tool* commonly suggests the implements of a craftsman or laborer; * * *

It seems to us that the poultry bands at bar are implements of the poultry raising business when chiefly used for the purpose of identification of poultry. [P. 407.]

After plaintiff had rested counsel for defendant moved, pursuant to Rule 8.3(c) of the Rules of the Customs Court then in effect, to dismiss the action due to insufficiency of evidence. Defendant further contended the matter should be dismissed with respect to the choker hooks under the theory of *stare decisis*. *See, Northwest Machinery Sales Co., et al. v. United States*, 66 Cust.Ct. 77, C.D. 4170 (1971). The court after hearing argument denied defendant's motion.

Accordingly, all the fittings set forth in schedule A, except merchandise described as "Guyline Sleeves" which was abandoned by plaintiff, are properly entitled to entry free of duty under item 666.00, *supra*, as claimed. Plaintiff has also abandoned its claim challenging the appraisement of the imported merchandise, and it is, therefore, dismissed.

■ The balance of the merchandise, i.e. corner bits and repointer tips, will be considered separately from the grouser bars and caps. Defendant has conceded, and plaintiff has agreed to consider "Argument III" of defendant's brief as an amendment of the pleadings to conform to the evidence. This being consented to the court orders the amendment of the pleadings to include item 664.05, *supra*. The parties have agreed that the corner bits and repointer tips are subject to classification as parts of bulldozers and other machinery described in item 664.-05, *supra*, respectively. Accordingly, such

merchandise is subject to classification under the provisions of item 664.05, *supra,* and dutiable at 8%, 7%, 6% or 5% ad valorem, depending upon the date of entry.

■ The grouser bars and caps, designated item Nos. 834–24, 833–22, 852–20, 847–20, 848–22 and 849–24 were conceded by defendant to be entitled to free entry under item 692.30, *supra.* The court, therefore, holds such items subject to classification as parts of tractors suitable for agricultural use as claimed. The claims as to the remaining grouser caps and bars having been abandoned are dismissed.

Judgment will be entered accordingly.

### SCHEDULE A

Standard Ferrule Type Choker Hooks
Ken "2-Way" Choker Hook
Jump-Proof Choker Hooks
Featherweight Choker Hooks
Zinc Choker Ferrules
Spiral Ferrules
Splice-Master Sleeve
Butt Hooks
McGovern Safety Butt Hooks
Double McGovern Safety Butt Hooks
Wedge Type Choker Eye Sockets
Eye Sockets
Hanging Strap Sockets
Swivel Strap Sockets
Swivel Strap Socket Ferrules
Swivel Dees
Mueller "Swivel Shackles"
Butt Rigging or Mainline Shackles
Loading Hooks
Swivel Bull Hooks
Bull Hooks
Arch Hooks
Drawbar Hooks
Jumproof Skidmaster
Rollerbell
Sliding Hook
Mainline Skidder Rings
Guyline Sleeves
Tree Irons
Guyline Extension Hooks
Strawline Hooks

Strawline Swivels
Butt Rigging
Tag Plates
Mainline Butt Rigging
Mainline Butt Slider
Basket Line Hooks
Timberjack Twitchook

### SCHEDULE B

Corner Bits
Grouser Caps and Bars
Repointer Tips